BRADFORD MARINE, INC.,
Plaintiff/Counterdefendant–
Appellee,

v.

M/V "SEA FALCON," Her Engines, Tackle, Apparel and Other Appurtenances, Defendant/Counterplaintiff–Appellant,

Double Eagle Yacht Sales, Defendant.

No. 93–5102.

United States Court of Appeals,
Eleventh Circuit.

Sept. 15, 1995.

---

James W. Stroup, Daniel D. Douglass, P.A., Ft. Lauderdale, FL, for appellant.

Bonnie S. Crouch, James E. Tribble, Blackwell & Walker, P.A., Miami, FL, for appellee.

Before TJOFLAT, Chief Judge, COX, Circuit Judge, and DYER, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Appellant, the vessel *Sea Falcon*, appeals from a judgment assessing attorney's fees against it in an *in rem* action to enforce a maritime lien for necessaries pursuant to 46 U.S.C. § 31342 (Supp. III 1991). The district court held that the *Sea Falcon* was properly liable for the fees because the repair contract at issue provided that the plaintiff would receive attorney's fees if it retained legal counsel to collect its repair charges. Because attorney's fees cannot be assessed against a vessel *in rem* in this manner, we vacate the district court's award of attorney's fees against the *Sea Falcon*.

## I.

Bradford Marine, Inc. ("Bradford") performed repair work on the *Sea Falcon* at the request of its captain. The repair contract, which the captain signed, provided that "[s]hould it become necessary to collect any charges upon demand of an attorney, the Owner(s) of the Yacht agree(s) to pay a reasonable attorney's fee, costs and interest." After Bradford completed the repairs, the *Sea Falcon*'s owner, Double Eagle Yacht Sales ("Double Eagle"), failed to pay the bill.

Bradford filed a complaint against the *Sea Falcon in rem* and Double Eagle *in personam* to collect the debt. Bradford sought from both Double Eagle and the *Sea Falcon* the amount owed, interest and costs, and attorney's fees. Because the repairs were "necessaries" provided to a vessel, Bradford sought a maritime lien on the *Sea Falcon* and requested that the lien be foreclosed.

The *Sea Falcon* was arrested. Although a summons issued for Double Eagle, Double Eagle was never served. Double Eagle filed a claim of ownership and moved the court to release the *Sea Falcon*, stating in its motion that it was prepared to place $17,826.76—the amount of Bradford's repair claim plus 12% to cover costs—in the registry of the court pursuant to Rule 11(A)(3) of the Local Admiralty Rules for the Southern District of Florida. The district court issued an order releasing the *Sea Falcon* subject to Double Eagle's placement of the funds with the court. Five days after the court issued its order, Bradford filed a motion to modify the order, urging that, pursuant to Local Rule 11(A)(3), the amount placed with the court should be increased "to include estimated attorneys' fees, interest, and costs." After the *Sea Falcon* had been released, the district court granted Bradford's motion and ordered the *Sea Falcon* to deposit an additional $6,048.36 into the registry of the court. The *Sea Falcon* complied.

The *Sea Falcon* filed an answer and a counterclaim alleging breach of contract, wrongful arrest, and damage to the vessel

while under arrest. Double Eagle, however, did not file an answer. After a one-day bench trial, the court determined that Double Eagle had breached the repair contract; that Bradford's work on the vessel was performed in a skilled and careful manner except for one aspect of the work not relevant to this appeal; that the *Sea Falcon* was appropriately maintained during the arrest; and that, under the repair contract, Bradford was entitled to attorney's fees. The court entered final judgment against "the Defendant"—apparently the *Sea Falcon*—for $22,901.93, a sum consisting of the cost of the repair, late payment fees, custodial fees, and interest. The final judgment stated that the court would award attorney's fees upon proper motion from Bradford. Upon Bradford's motion, the court awarded attorney's fees of $14,212.50 and further costs of $2,611.84.

After Bradford filed a motion to release the funds on deposit in the court's registry, the *Sea Falcon* filed a notice of appeal and motion to stay judgment. The district court required the *Sea Falcon* to post a supersedeas bond covering the amount of the judgment, costs, and attorney's fees less the amount already in the registry of the court to obtain a stay of execution. The *Sea Falcon* complied, depositing the additional funds with the court.

The *Sea Falcon*, but not Double Eagle, now appeals, urging that the district court erred in assessing attorney's fees against it

*in rem* because the legal services that gave rise to the fees were not "necessaries" furnished to the *Sea Falcon*.[1] Because we agree, we reverse.

## II.

We first address whether this court has jurisdiction to decide this appeal. It is, at best, unclear whether a final judgment has been entered as to Bradford's *in personam* claim against Double Eagle. Although all of the pleadings and court orders below carried Double Eagle in the style, it appears that Double Eagle never filed any pleadings except its notice of ownership. The district court used both "Defendant" and "Defendants" without distinction in its findings of fact and conclusions of law but did not note to which party—Double Eagle or the *Sea Falcon*—the singular term "Defendant" referred. The court's judgment states that "the Defendant" is liable for the judgment; because the *Sea Falcon* appears to have been the only active litigant, we interpret the judgment as applying only to the *Sea Falcon in rem*. Because Bradford never dismissed its claims against Double Eagle and judgment apparently was never entered against Double Eagle, Bradford's *in personam* claim against Double Eagle remains to be resolved below.[2]

"To be appealable an order must either be final or fall into a specific class of interlocutory orders made appealable by statute or

---

**1.** The *Sea Falcon* also argues that: (1) the district court lacked jurisdiction to increase the amount of security placed in the court's registry after the *Sea Falcon* had been released; and (2) the district court erred in concluding that there was no damage done to the vessel while it was under arrest (and under the care of Bradford, the substitute custodian). The first issue is moot. Because the court required the *Sea Falcon* to deposit the entire amount of the judgment, including attorney's fees, with the court before staying execution of the judgment, no relief could be granted even if the district court erred when it ordered the *Sea Falcon* to place additional monies with the court prior to trial. We reject the *Sea Falcon*'s second argument without discussion. *See* 11th Cir.R. 36–1.

**2.** Although Double Eagle was never served *in personam* and never filed an answer, Bradford contends on appeal that Double Eagle's appearance on behalf of the *Sea Falcon* was a general

appearance because Double Eagle did not expressly restrict its appearance. *See generally* Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims, Fed.R.Civ.P. ("An appearance to defend against an [*in rem*] admiralty and maritime claim ... may be expressly restricted to the defense of such claim, and in that event shall not constitute an appearance for the purposes of any other claim with respect to which such process is not available or has not been served."). We do not address whether Double Eagle properly restricted its appearance to one as owner of the *Sea Falcon* only or appeared generally; in either situation, the claims against Double Eagle remain unresolved. We further note that, even if the judgment were final, the issue we address in this case would remain—whether a maritime lien for necessaries can properly include attorney's fees awarded to a prevailing party pursuant to a clause in a repair contract.

jurisprudential exception." *Nichols v. Barwick*, 792 F.2d 1520, 1522 (11th Cir.1986). Under Rule 54(b), no judgment is final unless it adjudicates all claims among all parties. *See* Fed.R.Civ.P. 54(b). The court may, of course, determine that there is "no just reason for delay" and enter judgment on a particular claim, *id.*, but the district court did not do so in this case. Because the judgment in this case is not final, we do not have jurisdiction of this appeal under 28 U.S.C. § 1291 (1988).

■ We do, however, have jurisdiction of this appeal under 28 U.S.C. § 1292(a)(3) (1988), which provides jurisdiction of appeals from "[i]nterlocutory decrees ... determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed." *Id.* All the rights and liabilities of all the parties do not need to be determined before such an order is appealable. *Nichols*, 792 F.2d at 1522; *Gulf Towing Co. v. Steam Tanker, Amoco New York*, 648 F.2d 242, 244 (5th Cir. Unit B June, 1981) (per curiam).[3] Because Bradford's rights and liabilities as to the defendant vessel *Sea Falcon* have been decided, appellate jurisdiction exists under section 1292(a)(3). *See Trinidad Foundry & Fabricating, Ltd. v. M/V K.A.S. Camilla*, 966 F.2d 613, 614–15, 614 n. 1 (11th Cir.1992) (finding jurisdiction under section 1292(a)(3) where the plaintiff's claim against the vessel had been dismissed but the plaintiff's claims against the vessel's two owners remained unresolved); *Nichols*, 792 F.2d at 1522 (finding jurisdiction under section 1292(a)(3) where the plaintiff's claims against two defendants had been finally decided but one defendant's third-party claims remained unresolved); *Gulf Towing*, 648 F.2d at 244 (finding jurisdiction under section 1292(a)(3) where the plaintiff's claims

against three defendants had been resolved but cross-claims between two defendants remained pending); *Walter E. Heller & Co. v. O/S Sonny V.*, 595 F.2d 968, 971 (5th Cir. 1979) (finding jurisdiction under section 1292(a)(3) where the plaintiff's claims against two defendants had been resolved but one defendant's counterclaims against the plaintiff remained pending); 9 James W. Moore, *Moore's Federal Practice* ¶ 110.19[3], at 202 (2d ed. 1995) ("[Section] 1292(a)(3) has been applied to permit interlocutory appeal of orders that dispose of the claims of one or more but fewer than all of the parties in multiparty admiralty litigation in circumstances in which, in other civil actions, final judgment could be entered under Rule 54(b) but was not." (citing *Nichols*, 792 F.2d at 1520; *Walter E. Heller*, 595 F.2d at 968)); *see generally id.* ¶ 110.19[3]. Thus, we turn to the merits of the *Sea Falcon*'s appeal.

## III.

■ Bradford does not argue that any statutory provision specifically provides for the award of attorney's fees against the *Sea Falcon*. Rather, Bradford urges that the *Sea Falcon* is liable *in rem* for fees because the attorney's fee provision in the repair contract binds the vessel. As we discuss below, this argument does not survive a close examination of the nature of an *in rem* action to enforce a maritime lien for necessaries.

■ The creation of a maritime lien for necessaries furnished to a vessel is governed by 46 U.S.C. §§ 31341–31342 (1988 & Supp. III 1991).[4] Section 31342 states that "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner" possesses a maritime lien on that vessel and can enforce that lien *in rem*.[5] A

---

3. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

4. These provisions recodify that part of the Maritime Lien Act previously found at 46 U.S.C. §§ 971–974. The recodification was not intended substantively to change maritime law. *See* H.R.Rep. No. 918, 100th Cong., 2d Sess. 15, 36, 48 (1988), *reprinted in* 1988 U.S.C.C.A.N. 6104,

6108, 6129, 6141. An inadvertent substantive change made to § 31342 was corrected in 1989. *See* Coast Guard Authorization Act of 1989, Pub.L. No. 101–225, § 303(6), 103 Stat.1908, 1924 (1989).

5. Section 31342 provides:
   (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner—
   (1) has a maritime lien on the vessel;

suit *in rem* to enforce a maritime lien is limited to the value of the lien itself. "The only object of the proceeding *in rem*, is to make [the right to the maritime lien] available—to carry it into effect. It subserves no other purpose." *The Rock Island Bridge*, 73 U.S. (6 Wall.) 213, 215, 18 L.Ed. 753 (1867) ("The lien and the proceeding *in rem* are, therefore, correlative—where one exists, the other can be taken, and not otherwise."). Moreover, maritime liens are governed by the principle of "*stricti juris* and will not be extended by construction, analogy or inference." *Piedmont & Georges Creek Coal Co. v. Seaboard Fisheries Co.*, 254 U.S. 1, 12, 41 S.Ct. 1, 4, 65 L.Ed. 97 (1920). We continue our analysis with these principles in mind.

Bradford's argument that the attorney's fees in this case are properly charged against the *Sea Falcon in rem* can succeed only if the fees, which Bradford incurred as a result of retaining legal counsel to pursue a claim against the *Sea Falcon* and its owners, were (1) "necessaries" and (2) provided to the *Sea Falcon.* Section 31301(4) provides that the term "'necessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4) (1988). The word "includes" in this definition was not intended to be exhaustive. H.R.Rep. No. 918, at 14–15, 36, 1988 U.S.C.C.A.N. at 6107–08, 6129. The term has been liberally construed to include "'what is reasonably needed in the ship's business,'" *J. Ray McDermott & Co. v. Off-Shore Menhaden Co.*, 262 F.2d 523, 525 (5th Cir.1959) (quoting *The Penn*, 273 F. 990, 991 (3d Cir.1921)), such as "goods or services that are useful to the vessel, keep her out of danger, and enable her to perform her particular function. Necessaries are the things that a prudent owner would provide to enable a ship to perform well the functions for which she has been engaged." *Equilease Corp. v. M/V Sampson*, 793 F.2d 598, 603 (5th Cir.) (en banc), *cert. denied*, 479 U.S. 984, 107 S.Ct. 570, 93 L.Ed.2d 575 (1986);

*Payne v. SS Tropic Breeze*, 423 F.2d 236, 241 (1st Cir.) ("The appropriate test ... is whether the goods or services in question were necessary to the continued operation of the vessel."), *cert. denied*, 400 U.S. 964, 91 S.Ct. 363, 27 L.Ed.2d 383 (1970). The attorney's services for which Bradford seeks to hold the *Sea Falcon* liable *in rem* did not help the *Sea Falcon* perform her function. "[W]hat is not furnished to fulfill a want of a ship cannot constitute repairs, supplies or services for which the ship can be held liable *in rem*." 2 *Benedict on Admiralty* § 35, at 3–24 (7th ed. 1995). Thus, it is clear that the legal services, which were provided to Bradford to help it pursue its case, are not "necessaries." In addition, the legal services were not provided to the *Sea Falcon;* rather, they were provided to Bradford to aid it in pursuing its claim. *Cf. Piedmont & Georges*, 254 U.S. at 10–11, 41 S.Ct. at 3–4 (refusing to find a maritime lien for necessaries because it was not possible to discern whether the supplies at issue were actually provided to a vessel). We conclude, therefore, that the attorney's fees in this case cannot be assessed against the *Sea Falcon in rem.*[6] *See Inland Credit Corp. v. M/T Bow Egret*, 552 F.2d 1148, 1155 (5th Cir.1977) (affirming without analysis the district court's decision that two parties successfully asserting liens for necessaries could not receive attorney's fees *in rem* but could receive them *in personam* ); *Peterson v. The S.S. Wahcondah*, 216 F.Supp. 642, 644 (D.La.1963) ("This court can find no reasonable hypothesis to support a finding that these attorney fees were expended as a service to the ship."), *rev'd on other grounds*, 331 F.2d 44 (5th Cir.1964).

None of the three cases Bradford cites to support its position persuades us differently. The first two, *General Electric Credit Corp. v. The Oil Screw Triton, VI*, 712 F.2d 991 (5th Cir.1983), and *Key Bank of Puget Sound v. The Alaskan Harvester*, 738 F.Supp. 398 (W.D.Wash.1989), involved attorney's fees assessed *in rem* in suits foreclosing preferred

---

(2) may bring a civil action in rem to enforce the lien; and
(3) is not required to allege or prove in the action that credit was given to the vessel.
(b) This section does not apply to a public vessel.

6. We do not address whether legal services, if provided directly to aid a vessel, would constitute necessaries subject to a maritime lien.

ship mortgages. *See General Elec.*, 712 F.2d at 994 ("The general rule in almost all American jurisdictions is that attorney's fees and costs, when stipulated in the mortgage contract, may be validly recovered as part of the mortgage indebtedness secured. This general rule has been applied without comment in numerous preferred ship mortgage foreclosure cases." (citations omitted)); *Key Bank*, 738 F.Supp. at 406. They are not directly applicable to the case before us, and we cannot blindly apply them in light of the text of section 31342 and the history of liens for necessaries. The third case, *Whitney–Fidalgo Seafoods, Inc. v. The Miss Tammy*, 542 F.Supp. 1302 (W.D.Wash.1982), involved a claim to collect a promissory note for the purchase of a vessel and a claim for necessaries supplied to the vessel. *Id.* at 1303. After the vessel was arrested, the parties stipulated to its release in exchange for the posting of a bond. The owner of the vessel subsequently petitioned the court to reduce the bond, contending that the value of the *in rem* claims was less than the bond posted. The court refused, concluding that the amount of the claim *in rem*, including the "potential award of costs, attorney's fees and prejudgment interest," made the bond amount proper. *Id.* at 1305. The court's opinion does not clarify, however, whether the attorney's fees were to be awarded pursuant to a provision in the promissory note, as we believe is most likely, or as part of the claim for necessaries. As a result, we find the case unpersuasive.

### IV.

We conclude that the district court erred in assessing attorney's fees against the *Sea Falcon in rem*. Accordingly, we VACATE the award of attorney's fees against the *Sea Falcon* and REMAND the case with the instruction that the district court enter a judgment consistent with this opinion.

IT IS SO ORDERED.